UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD S.,<br><br>  Petitioner,<br><br>  v.<br><br>TONYA ANDREWS, et al.,<br><br>  Respondents. | No. 1:26-cv-00590-TLN-CSK<br><br>**ORDER** |

This matter is before the Court on Petitioner Mohammad S.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) For the reasons set forth below, the Court GRANTS Petitioner's Petition.

///
///
///
///
///
///
///
///

1

I.   **FACTUAL AND PROCEDURAL BACKGROUND**[1]

The instant action arises from Petitioner's allegedly unlawful detention. (*See* ECF No. 1.) Petitioner is an Indian man who fled India due to being persecuted and tortured on account of his religion. (ECF No. 6-1 at 2.) Petitioner arrived in the United States on or about May 28, 2024, and entered at an unknown location through the southern border of the United States, without inspection and without valid entry documents or a visa. (*Id.* at 2–3.) Upon Petitioner's arrival, he walked up to border officials and informed them he had a fear of returning to India. (*Id.* at 3.)

Petitioner was detained for approximately a month, during which time he was referred to an asylum officer who conducted a credible fear interview. (*Id.*) At the conclusion of the interview, the asylum officer found him to be credible and made a positive credible fear determination. (*Id.*) Petitioner was then released on or about September 25, 2024, on conditional parole pursuant to Immigration and Nationality Act ("INA") § 236 (8 U.S.C. § 1226) after a determination that he was neither a flight risk nor a danger to the community. (*Id.*) On the same date, Petitioner was issued a Notice to Appear ("NTA"), ordering him to appear before the Concord Immigration Court. (*Id.*)

Petitioner not only complied with all conditions of his release on conditional parole, but he also attended all his court hearings, timely filed his application for asylum, attended his biometrics appointments, and otherwise obeyed all laws of the United States. (*Id.*) He was issued a work permit as well as a Social Security card and California driver's license. (*Id.*)

On October 15, 2025, Petitioner reported to his check-in at the Fresno field office of U.S. Immigration and Customs Enforcement ("ICE"). (*Id.*) Upon arrival, ICE officers revoked his prior release on conditional parole and arrested him. (*Id.*) Petitioner was arrested despite following all conditions of his release and other laws, despite having a valid work permit and driver's license, and despite his asylum application pending before the immigration court. (*Id.*) Petitioner was re-detained without notice or opportunity to be heard, or any showing of changed

---

[1] The following factual background is taken largely verbatim from Petitioner's brief in support of his motion for temporary restraining order. (ECF No. 6-1.) Respondents do not contest these facts. (*See generally* ECF No. 8.)

1  circumstances.  (*Id.*)

2  On January 23, 2026, Petitioner filed a Petition for Writ of Habeas Corpus, challenging the lawfulness of his civil detention and seeking release.  (ECF No. 1.)  On January 29, 2026, the Court granted Petitioner's Motion for a Temporary Restraining Order ("TRO") and ordered Respondents to show cause why the Petition should not be granted.  (ECF No. 7.)  On February 3, 2026, Respondents filed a response to the order to show cause.  (ECF No. 8.)  On February 9, 2026, Petitioner filed a reply.  (ECF No. 9.)  The Court therefore considers the Petition on its merits.

## II.  STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.  ANALYSIS

In his Petition for Writ of Habeas Corpus, Petitioner claims he is being unlawfully subjected to mandatory detention in violation of due process.[2]  (*See* ECF No. 1.)  In response, Respondents contend Petitioner is an "applicant for admission" who is subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)").  (ECF No. 8 at 2–4.)

---

[2]  Petitioner also asserts claims for violations of the Administrative Procedure Act and INA. (ECF No. 1 at 33–35.)  The Court finds it need not address Petitioner's additional claims to rule on the Petition, as these claims seek the same relief Petitioner seeks in his due process claim.

Respondents also contend Petitioner has received sufficient procedural due process. (*Id.* at 5–6.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### A.    Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

1    Here, the Court agrees with Petitioner that he has a protected liberty interest in his
2 continued freedom as he was released on conditional parole on September 24, 2024, and he
3 complied with all conditions of his release. (ECF No. 6-1 at 3, 6.) Under *Morrissey*, this release
4 implied a promise that he would not be re-detained, during the pendency of his immigration
5 proceedings, if he abided by the terms of his release. As this Court has found previously, along
6 with many other courts in this district when confronted with similar circumstances, Petitioner has
7 a clear interest in his continued freedom as he awaits the outcome of his asylum proceedings.
8 *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's
9 actions in allowing petitioner to remain in the community for over five years strengthened
10 petitioner's liberty interest).

11   The Court does not find persuasive Respondents' argument that Petitioner is subject to
12 mandatory detention under 8 U.S.C. § 1225(b) because he is an "applicant for admission." (ECF
13 No. 8 at 2–4.) This Court has now ruled on this same issue countless times and courts throughout
14 the Ninth Circuit have overwhelmingly rejected Respondents' legal position and found the
15 government's re-classification of individuals under the mandatory detention policy unlawful. *See*
16 *Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal.
17 Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *see*
18 *also Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Dec. 18, 2025)
19 (issuing vacatur of unlawful DHS mandatory detention policy for a nationwide certified class).

20   As this Court has previously noted, it will not reconsider its position absent new
21 argument, case law, or distinguishable facts. Respondents provide no such grounds for
22 reconsideration. (*See* ECF No. 8.) Thus, Petitioner is not an "applicant for admission" subject to
23 mandatory detention under § 1225(b)(2). Petitioner is instead subject to 8 U.S.C. § 1226(a)
24 ("§ 1226(a)") and entitled to the process that statute requires prior to re-detention, including a
25 bond hearing at a minimum.[3] Accordingly, Petitioner has a protected liberty interest in his

---

26  3    Respondents request the Court hold its ruling on the merits in abeyance pending the Ninth
27 Circuit's decisions regarding the appeals in *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239
(W.D. Wash. 2025), and *Carballo v. Andrews*, No. 1:22-cv-00978-KES-EPG (HC), 2025 WL
28 2381464 (E.D. Cal. Aug. 15, 2025). (ECF No. 8 at 3, 6.) The Court denies this request. As

continued freedom protected by the Due Process Clause.

### B. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Respondents violated Petitioner's due process rights.

First, Petitioner has a substantial private interest in remaining free from detention. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner asserts even though he was released on conditional parole, he retained a weighty liberty interest under the Due Process Clause in avoiding re-incarceration. (ECF No. 6-1 at 8.) Petitioner further notes that in the year following his release, he timely filed his asylum application, applied for and was granted work authorization (with which he has been working hard to support himself and his family), hired counsel to represent him in his political asylum case, and established extensive community ties in the United States. (*Id.*) Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

The Court does not find persuasive Respondents' argument that "Petitioner cannot claim a 'weighty' liberty interest from a temporary reprieve from a limited detention for removal proceedings." (ECF No. 8 at 5.) Respondents assert that even though "Petitioner claims a liberty interest, Petitioner's initial release into the United States, from the beginning, was granted with

---

discussed herein, the Court finds Respondents violated Petitioner's procedural due process rights and the Court will not delay injunctive relief on the prospective chance a pending appeal could change this outcome.

6

the understanding that parole was always temporary." (*Id.* (citing 8 U.S.C. § 1182(d)(5)(A) ("§ 1182(d)")).) As stated by another district court, § 1182(d):

> authorizes the Secretary to grant parole "on a case-by-case basis for urgent humanitarian reasons or significant public benefit" and provides that "when the purpose of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled.

*Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1144 (D. Or. 2025). Revocation of parole pursuant to this statute is to be terminated only on a case-by-case basis and only upon "written notice to the [noncitizen]." *Id.* at 1138; *see also Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 139 (W.D.N.Y. 2025) (explaining "DHS must provide 'written notice to the [noncitizen] and he or she shall be restored to the status that he or she had at the time of parole"). Respondents offer no evidence or argument they followed the process set forth in § 1182(d) — and provided Petitioner written notice — to revoke Petitioner's parole. Further, the fact that Respondents must comply with the process set forth in § 1182(d) in order to revoke parole does not change the fact that they must also comply with the process that § 1226(a) requires prior to re-detention, which is a bond hearing at a minimum. Ultimately, the Court agrees with Petitioner that "determining whether [R]espondents provided [P]etitioner with sufficient notice of a pending parole termination would not resolve the question before the [C]ourt, i.e., whether [R]espondents provided [Petitioner] with sufficient due process prior to [his] detention." (ECF No. 9 at 10.)

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. Petitioner maintains that he was not afforded a pre-deprivation notice or hearing, and that there is no evidence his detention would service to prevent flight or protect against danger to the community. (ECF No. 6-1 at 3, 8); *see also Manzanarez*, 2025 WL 3247258, at *4 (quoting *A.E. v. Andrews*, No. 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing.")). Again, for the reasons set forth above, the Court does not find persuasive Respondents' argument that Petitioner was afforded procedural due process under § 1182(d). (*See* ECF No. 8 at 5.)

7

Thus, the Court finds Petitioner was likely erroneously deprived of his liberty interest. Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." (cleaned up)).

The cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for Respondents. Indeed, these are the very processes owed to Petitioner under § 1226(a), which Petitioner contends applies to him. (ECF No. 6-1 at 3.) Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal. Moreover, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his asylum application than to continue to detain him. *See also Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents are required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Here — where Petitioner has substantially complied with the conditions of his release and there is no final order of removal — the Court

8

finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty.

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to pre-deprivation notice and hearing to determine whether detention was warranted. Respondents did not provide either. Moreover, Respondents did not provide a post-deprivation opportunity to be heard. The Court accordingly finds Respondents violated Petitioner's procedural due process rights.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future; or (b) Respondents demonstrate by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: February 19, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE